[No. 40770-8-I. Division One. November 10, 1997.]

*In the Matter of the Personal Restraint of* DEREK E. GRONQUIST, *Petitioner.*

---

*Derek E. Gronquist,* pro se.

*Christine O. Gregoire, Attorney General,* and *John S. Blonien* and *Eric A. Mentzer, Assistants,* for respondent.

PER CURIAM —Derek E. Gronquist challenges the sanctions imposed following a prison disciplinary hearing at which he was found guilty of committing four general infractions within a six-month period.[1] He argues that two of the underlying general infractions should not have counted, because one did not qualify as a countable offense and the other was unconstitutionally obtained. He also challenges his 657 hearing on due process grounds, arguing that he was deprived of his right to present evidence.

We hold that the Department of Corrections (DOC) violated Gronquist's constitutional right to present witnesses at his 657 hearing. Therefore, we remand for a new hearing.

Standard of Review

■ ■ A petitioner is entitled to collateral relief only if he proves (1) actual and substantial prejudice arising from constitutional error, or (2) nonconstitutional error that inherently results in a "complete miscarriage of justice."[2]

[1]This will be referred to as a "657 violation," shorthand for a violation of WAC 137-28-260(657).

[2]*In re Personal Restraint of Cook,* 114 Wn.2d 802, 813, 792 P.2d 506 (1990).

A personal restraint petition (PRP) must be supported by facts, not merely conclusory allegations.[3] The supporting evidence must be based on "more than speculation, conjecture, or inadmissible hearsay."[4] Failure to meet this burden calls for dismissal of the petition.[5]

██ ██ Review of prison disciplinary proceedings is limited to determining whether the action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding."[6] An action is not arbitrary and capricious where the petitioner was afforded the minimum due process protections applicable in prison disciplinary proceedings and the decision is supported by some evidence.[7] Due process requires that the inmate: (1) receive notice of the alleged violation; (2) be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receive a written statement of the evidence relied on and the reasons for the disciplinary action.[8]

## 657 Hearing

Gronquist argues that he was deprived of his right to due process because three officer witnesses refused to provide him with written statements and the hearing examiner denied his request to present their testimony. He alleges that Officer Edwards would have testified that Gronquist was not guilty of one of the general infractions,

---

[3]*Cook*, 114 Wn.2d at 813-14.

[4]*In re Personal Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

[5]*Rice*, 118 Wn.2d at 886.

[6]*In re Personal Restraint of Reismiller*, 101 Wn.2d 291, 294, 678 P.2d 323 (1984).

[7]*In re Personal Restraint of Burton*, 80 Wn. App. 573, 585, 910 P.2d 1295 (1996) (regarding procedural requirements); *In re Personal Restraint of Anderson*, 112 Wn.2d 546, 548-49, 772 P.2d 510 (1989) (regarding necessary quantum of evidence).

[8]*Burton*, 80 Wn. App. at 585.

improperly accepting an item of value from another inmate,[9] because he did not accept the item. The hearing examiner gave no reason for refusing to allow the witnesses.[10]

■ Due process requires prison officials to provide justification for denying an inmate's request to present witnesses.[11] The State maintains that the examiner did not err because an inmate's right to present evidence is limited to the presentation of relevant evidence.[12] It argues that Officer Edwards would not have provided relevant evidence because the only issue at the 657 hearing was whether Gronquist had been found guilty of four or more general infractions within six months, not whether the infractions were valid.

■ The State's argument assumes, without citation to authority, that an inmate cannot challenge the validity of underlying general infractions at a 657 hearing. But the relevant authority indicates otherwise. An inmate's due process liberty interest is implicated only when he faces restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[13] The range of available punishment for a general

---

[9]WAC 137-28-220(351). Because the item allegedly accepted was a bag of tobacco, this general infraction will be referred to as the "tobacco violation."

[10]For reasons that follow, the other two witnesses, who allegedly would have testified that Gronquist's "call-out button" was malfunctioning and that the tobacco violation hearing was held in Gronquist's absence, would not have provided relevant evidence at the 657 hearing.

[11]*Ponte v. Real*, 471 U.S. 491, 497, 105 S. Ct. 2192, 2196, 85 L. Ed. 2d 553 (1985); *see also* WAC 137-28-300(6)(c) (hearing officer shall document on written record reasons for denying testimony requested in writing by inmate).

[12]*Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S. Ct. 2963, 2980, 41 L. Ed. 2d 935 (1974).

[13]*Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995) (due process liberty interest does not apply to imposition of disciplinary segregation). *See also Wolff*, 418 U.S. at 571-72 n.19 (emphasizing that minimal due process rights afforded to inmates facing deprivation of "good time" not necessarily required "for the imposition of lesser penalties such as the loss of privileges.").

infraction does not meet this standard.[14] This principle is reflected in the DOC's own rules, which authorize a prison supervisor to find an inmate guilty of a general infraction without holding a hearing.[15] Moreover, although an inmate may appeal such a finding, the appeal can also be decided without a hearing.[16]

Serious infractions, on the other hand, carry harsher punishment, such as loss of "good time" credits.[17] Therefore, an inmate's due process rights are triggered when an inmate is charged with a serious infraction. Again, this requirement is reflected in the DOC's rules.[18] Because a 657 violation is a serious infraction which resulted in the loss of "good time" here, Gronquist had a constitutional right to a hearing and to call witnesses at the hearing unless unduly hazardous to institutional safety and correctional goals.

Application of these principles to Gronquist's case illustrates the fundamental unfairness of the State's assumption. The DOC scheduled a hearing to determine whether Gronquist was guilty of accepting tobacco from a fellow inmate. But because of a malfunctioning "call out" button in his cell, Gronquist's efforts to alert officers to release him so that he could attend the hearing proved fruitless. As a result, Gronquist did not attend the hearing and was precluded from presenting his defense, which allegedly was to include testimony from the other inmate that Gronquist did not accept the tobacco. It is not surprising, then, that he was found guilty of the infraction.

---

[14]WAC 137-28-240 provides as punishment a reprimand or warning, a written order stop problematic behavior, the loss of privileges, room or cell confinement not to exceed 10 days, or up to 120 hours of extra work duty.

[15]WAC 137-28-230(4)(b) (prison supervisor may find inmate guilty of general infraction without hearing; see also WAC 137-28-230(4)(c) (inmate has no right to call witnesses or present documentary evidence at hearing set by supervisor).

[16]WAC 137-28-250(2)(b).

[17]WAC 137-28-350(1).

[18]WAC 137-28-270 through -430 (detailing the more formalized procedures following filing of serious infraction report).

Gronquist appealed the finding, arguing that the DOC violated his constitutional right to attend the hearing. But because Gronquist had no such right under the general infraction procedure, his appeal was without merit and was rejected.[19] If we were to adopt the State's position that only the existence, and not the validity, of underlying general infractions is at issue in a 657 hearing, Gronquist would be forever foreclosed from any meaningful challenge to his tobacco violation. Under these circumstances, the 657 hearing would become an empty formality because, as occurred here, the State could prove the violation simply by referring the examiner to department records showing four general infractions within the six-month period. The inmate, in turn, would be left with the daunting task of rebutting the existence of the prior infractions.

This result does not comport with basic notions of fairness and justice. Nor does it promote the type of respect for the disciplinary process that is essential to effective prison management. Because Gronquist's due process rights did not attach until the 657 hearing, it was only there that he could meaningfully challenge his general infraction by presenting witnesses and other evidence to support his defense. We therefore find that Gronquist has the right to challenge the validity of his tobacco violation at the 657 hearing.

Officer Edwards' alleged testimony was relevant to determine the validity of the general infraction. Because Gronquist had the right to present relevant testimony, or at least a written statement,[20] the 657 hearing officer violated his right to due process.

■■■ Gronquist, however, must also prove that he was prejudiced by the constitutional error. In other words, he

---

[19]Because Gronquist availed himself of his right to an administrative appeal, we leave for another day the question of whether an inmate must first exhaust his administrative remedies before being permitted to challenge a minor infraction at a 657 hearing.

[20]*See* WAC 137-28-300(4) (examiner may consider written statements of staff members rather than live testimony unless examiner determines witness's presence necessary to adequate understanding of issues).

must establish that Officer Edwards' testimony would have shown that the tobacco violation was invalid, thus depriving the State of sufficient evidence to prove the 657 charge. A petitioner who relies on the knowledge of others for supporting evidence must present affidavits containing matters to which the affiants are competent to testify.[21] Gronquist plainly has failed to do this. But how could he? According to Gronquist, the witnesses refused to give written statements and the examiner did not compel their presence at the 657 hearing. The State does not dispute these allegations. There was, therefore, no way for Gronquist to make an offer of proof sufficient to withstand the rigorous prejudice standard required of a personal restraint petitioner.

We find that Gronquist has raised an issue of merit that can be decided without appointment of counsel for Gronquist, additional briefing, or oral argument.[22] We remand for a new 657 hearing. At that hearing, the DOC must afford Gronquist an opportunity to challenge the validity of the underlying infractions. The DOC must also honor Gronquist's due process right to present a defense through presentation of relevant evidence and witnesses or, at a minimum, statements of relevant witnesses. If the DOC denies a request for witnesses, it must provide reasons on the record for the denial.

For the following reasons, we find that Gronquist's remaining contentions lack merit.

On-site Adjustment

Gronquist claims that his general infraction for "cross pod signing" was improperly counted to establish the 657 violation because he was immediately reprimanded, then ordered back to his cell, for the misconduct. A reprimand or order causing an inmate to "remove him/herself from

---

[21]*Rice*, 118 Wn.2d at 886.

[22]RAP 16.11.

the situation" constitutes an "on-site adjustment."[23] "An on-site adjustment . . . cannot be considered a general infraction for the purposes of determining whether a #657 serious infraction has occurred."[24]

But here the officer followed up the adjustment with a written general infraction report, which resulted in a finding of guilt and a sanction of three days of cell confinement. Gronquist contends that once the officer chose to deal with the situation through an on-site adjustment, he was precluded from writing a general infraction report. Therefore, he argues, the general infraction should not count toward a 657 violation.

 Gronquist's complaint is supported by a literal reading of WAC 137-28-230(2), which provides: "In the event of a general infraction where a staff member does *not* make an on-site adjustment, the staff member may prepare and submit an infraction report." (Emphasis added.) This language suggests that an officer may *not* prepare a written report after employing on-site adjustment. However, we agree with the State that such an interpretation does not reasonably consider prison security concerns. General infractions include a wide variety of misconduct, some of which requires the immediate intervention of an officer. Security would be compromised if an officer who saw a general infraction had to choose between immediate on-site adjustment and filing an infraction report. Therefore, Gronquist's literal interpretation of the regulation is rejected. The officer was authorized to follow up his on-site adjustment with a written general infraction report. Because Gronquist was found guilty of the infraction and punished with cell confinement, the infraction could be counted toward a 657 violation.

 In any event, collateral relief may not be granted

---

[23]WAC 137-28-230(1).

[24]WAC 137-28-230(1). This necessarily follows given the requirement that a 657 violation be based on four separate incidents "which have been reported in writing[.]" WAC 137-28-657.

for a technical procedural violation that does not rise to the level of a deprivation of due process.[25] Gronquist does not allege that the DOC violated due process in finding him guilty of the general infraction. Nor could he; he was given notice of the infraction and an opportunity to defend himself at a hearing. Gronquist fails to establish that he was prejudiced by constitutional error.

Absence From Hearing

Gronquist claims that the DOC violated his due process right to attend the hearing at which he was found guilty of improperly accepting an item of value. As previously discussed, Gronquist's due process right to attend the hearing was not triggered by the general infraction procedure. The only right to attend the hearing was that provided by applicable regulations, not the due process clause. Therefore, even if he presented the testimony of officers showing that the DOC was at fault for his absence from the hearing, Gronquist would establish at most a procedural error for which he is not entitled to relief.

Sanction for 657 Violation

Gronquist received sanctions of five days of disciplinary segregation and the loss of 10 days "good time" credit for violating section 657. Gronquist contends that the regulations preclude the denial of good time credit. But the provision upon which he relies, WAC 137-28-100, was repealed in 1995. No such prohibition exists in the current regulations. Rather, the definition of "[g]ood conduct time credits" provides that they may be lost for serious infractions.[26]

Gronquist also argues that the DOC violated his right to

---

[25]*Burton*, 80 Wn. App. at 585; *see also Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993) (alleged violation of discretionary procedural rule does not implicate a due process liberty interest).

[26]WAC 137-28-160.

due process by taking away the credit because it failed to notify him of the repeal of WAC 137-28-100. We agree with the proposition that it is fundamentally unfair for an inmate to be punished for violating a rule never disclosed by prison authorities. But that is not what happened here. Gronquist was found guilty of violating section 657, a rule of which he was or should have been aware. He essentially argues that, had he known he could be docked good time credits, he would not have violated section 657. This contention makes no sense. Nor does it establish either constitutional error or prejudice.

Sufficiency of Evidence

Gronquist complains that the State failed to present sufficient evidence to support the 657 charge. The State is required only to present "some" evidence to meet its burden in a prison disciplinary hearing.[27] Here the State presented evidence of Gronquist's four general infractions. Gronquist's claim to the contrary lacks merit. But because Gronquist was deprived of his due process right to challenge the underlying general infractions, this result may change after he is given an opportunity to present his defense to the tobacco violation.

We conclude that the DOC's denial of Gronquist's constitutional right to present witnesses at his 657 hearing was prejudicial. Therefore, we remand his case for a new 657 hearing, with an order that Officer Edwards provide either a written statement or live testimony detailing his involvement in and observations with respect to the general infraction.

---

[27]*Anderson*, 112 Wn.2d at 548-49.