198 P.3d 1033 (2008)
147 Wash.App. 365
BAINBRIDGE CITIZENS UNITED; and Gary Tripp, Director of Bainbridge Citizens United, Petitioners,
v.
WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES; and Doug Sutherland, Commissioner of Public Lands, Respondents.
No. 35961-8-II.
Court of Appeals of Washington, Division 2.
November 12, 2008.
*1034 Dennis Dean Reynolds, Charles Edward Maduell, Davis Wright Tremaine LLP, Seattle, WA, for Appellant(s).
Christa L. Thompson, Attorney at Law, Atty. Gen. Office Nat. Res. Div., Olympia, WA, for Respondent(s).
QUINN-BRINTNALL, J.
¶ 1 Bainbridge Citizens United informed the Department of Natural Resources that "approximately fifty vessels, seven rafts and thirty buoys" were trespassing on state-owned aquatic lands in Eagle Harbor. Clerk's Papers (CP) at 351. After the Department and the City of Bainbridge Island did not respond as United would have liked, United filed a petition for review under the Administrative Procedure Act (APA), ch. 34.05 RCW, and, in the alternative, a petition for declaratory judgment under the Uniform Declaratory Judgments Act (UDJA), ch. 7.24 RCW. United essentially claimed that the Department failed to enforce its own regulations against the parties who were trespassing on state-owned aquatic lands in Eagle Harbor. The Department filed a summary judgment motion, claiming that United was not entitled to relief under either the APA or the UDJA. United responded by filing its own summary judgment motion, in which it voluntarily abandoned its APA claim and sought relief solely under the UDJA. The trial court granted the Department's summary judgment motion. On appeal, United argues that the trial court should not have dismissed its UDJA claim. We hold that a declaratory judgment was not available because United failed to (1) join necessary parties, the vessel owners, or (2) challenge the construction or validity of a law or otherwise seek relief that is the proper subject for a declaratory judgment. Accordingly, we affirm.

FACTS

BACKGROUND
¶ 2 The State is charged with managing aquatic lands that it owns. RCW 79.105.030. The Department has promulgated many regulations to do so, including: (1) WAC 332-30-171(8), which governs open water moorage and anchorage; and (2) WAC 332-30-127, which defines unauthorized use and occupancy of aquatic lands.
¶ 3 In February 2005, Gary Tripp, the director of United,[1] wrote two emails to the *1035 Department telling it that "approximately fifty vessels, seven rafts and thirty buoys" were trespassing on state-owned aquatic lands in Eagle Harbor. CP at 351. Among other things, United was concerned about the vessels, rafts, and buoys because they (1) created a navigation hazard, (2) adversely impacted members' health and safety,[2] (3) interfered with waterfront amenities, (4) adversely impacted views and property values, and (5) caused problems for surrounding businesses. In these emails, Tripp also asked to meet with the Commissioner of Public Lands.
¶ 4 In March 2005, Tripp met with the Commissioner and several officials from the Department and the Attorney General's Office (AGO). According to Tripp, the Commissioner promised to provide him with a list of steps for removing trespassers from state-owned aquatic lands. Instead, the AGO wrote a letter to United's attorney asserting that it has discretion about how to best address such problems and explaining that it was exercising its discretion by working with the City to develop a harbor plan.[3]

LAWSUIT
¶ 5 In April 2005, United filed a petition for review under the APA[4] and, in the alternative, a petition for declaratory judgment under the UDJA.[5] United claimed that the Department failed to enforce WAC 332-30-127, the aquatic lands trespassing regulation, against the people creating problems on state-owned aquatic lands in Eagle Harbor.
¶ 6 Under the APA, United sought a trial court order requiring the Department to perform its duties under WAC 332-30-127, including: (1) serving written notice requiring the trespassing parties to vacate the premises within 30 days, (2) assessing and collecting a monthly use and occupancy fee from the trespassing parties, and (3) filing an unlawful detainer action against the trespassing parties along with an action to collect past due rent. Alternatively, United sought a declaratory judgment that (1) the trespassing parties are violating WAC 332-30-127 and (2) the Department has a mandatory duty to perform its duties under WAC 332-30-127, including those previously listed.
¶ 7 The Department filed a summary judgment motion, arguing that United was not entitled to relief under either the APA or the UDJA. With regard to United's APA claim, the Department argued that (1) its duties under WAC 332-30-127 were proprietary, (2) United lacked standing, and (3) its decision not to enforce WAC 332-30-127 was discretionary. With regard to the UDJA claim, the Department argued that (1) United failed to claim a justiciable controversy, and (2) its decision not to enforce WAC 332-30-127 was discretionary. Finally, the Department argued that United failed to join the trespassing parties as indispensable parties to the litigation.
¶ 8 United responded by filing its own summary judgment motion. In its motion, it abandoned its APA claim, stating, "Plaintiffs do not dispute the unavailability of an alternative remedy under the APA because [the Department's] management of state owned aquatic lands is a proprietary function." CP at 164 n. 2. But United maintained that it was entitled to relief under the UDJA.
¶ 9 In January 2007, the trial court granted the Department's summary judgment motion and denied United's summary judgment motion. The trial court did not explain its rationale. United appeals.

ANALYSIS
¶ 10 United argues that it was entitled to declaratory and injunctive relief under the UDJA because the Department failed to fulfill *1036 mandatory enforcement obligations under WAC 332-30-127 and WAC 332-30-171(8) against vessels trespassing in Eagle Harbor. Thus, United claims that the trial court erred when it summarily dismissed its action. We hold that summary judgment was proper because (1) the trial court lacked jurisdiction to hear this case because all necessary parties were not joined and (2) United does not argue that the regulations were ambiguous or invalid or otherwise demonstrate that this case is the proper subject of a declaratory judgment.

STANDARD OF REVIEW
¶ 11 On an appeal from summary judgment, we engage in the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004) (citing Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993)). Our standard of review is de novo. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005) (citing Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 516, 799 P.2d 250 (1990)).
¶ 12 "All questions of law are reviewed de novo." Berger v. Sonneland, 144 Wash.2d 91, 103, 26 P.3d 257 (2001). It is our duty to correctly apply the law and we are not confined by the legal issues and theories that the parties argued. King County v. Boundary Review Bd., 122 Wash.2d 648, 670, 860 P.2d 1024 (1993) (applying Maynard Inv. Co. v. McCann, 77 Wash.2d 616, 623, 465 P.2d 657 (1970)). Additionally, we may sustain a trial court's ruling on any correct ground, even if the trial court did not consider it. Nast v. Michels, 107 Wash.2d 300, 308, 730 P.2d 54 (1986).

FAILURE TO JOIN NECESSARY PARTIES
¶ 13 The Department argues that United failed to join all necessary parties because it declined to sue the alleged trespassers and, therefore, the trial court did not have jurisdiction over this case. We agree.
¶ 14 A trial court lacks jurisdiction if all necessary parties are not joined. Treyz v. Pierce County, 118 Wash.App. 458, 462, 76 P.3d 292 (2003), review denied, 151 Wash.2d 1022, 91 P.3d 94 (2004). Under RCW 7.24.110, a party seeking a declaratory judgment must join "all persons ... who have or claim any interest which would be affected by the declaration." A party is necessary if (1) the trial court cannot make a complete determination of the controversy without that party's presence, (2) the party's ability to protect its interest in the subject matter of the litigation would be impeded by a judgment in the case, and (3) judgment in the case necessarily would affect the party's interest. Town of Ruston v. City of Tacoma, 90 Wash.App. 75, 82, 951 P.2d 805, review denied, 136 Wash.2d 1003, 966 P.2d 902 (1998); Primark, Inc. v. Burien Gardens Assocs., 63 Wash.App. 900, 907, 823 P.2d 1116 (1992).
¶ 15 Here, United sought a declaration that the Department is compelled to enforce WAC 332-30-127 and WAC 332-30-171(8) against alleged trespassers in Eagle Harbor, but United did not join the alleged trespassers as parties. United argues that the trespassers are not necessary parties because it "has not requested that any action be taken directly against the trespassers on Eagle Harbor, and thus the effects that a judicial determination in this case may have on the trespassing vessel owners is `speculative and secondary to the issue at hand.'" Suppl. Br. of Appellant at 20. This argument is disingenuous.
¶ 16 In its complaint, United prayed for the following relief:
1. For an order requiring the DNR to enforce WAC 173-30-177 and perform its duties required hereunder pursuant to RCW 34.050.570(4)(b), including (1) serving notice in writing to the trespassing vessel owners requiring them to vacate the premises within thirty days; (2) collecting a *1037 "use and occupancy fee" from the trespassing vessel owners as of the date of notification; and (3) filing an unlawful detainer action against the party in trespass filed along with an action to collect past due rental.
2. In the alternative, for an order declaring that the subject vessels are in violation of WAC 173-30-127, that the DNR has unlawfully failed to enforce this regulation, and that the DNR has a mandatory duty hereunder to (1) serve notice in writing to the trespassing vessel owners requiring them to vacate the premises within thirty days; (2) collect a "use and occupancy fee" from the trespassing vessel owners as of the date of notification; and (3) file an unlawful detainer action against the party in trespass filed along with an action to collect past due rental.
CP at 16-17. And United's complaint contains several allegations about the vessel owners, including that (1) about 21 vessels were "vessels used for residential use" or "floating houses," and the others were "derelict vessels," (2) none of the vessels were moored to fixed moorage but instead were moored in open water without a permit, and (3) the vessels did not hold valid leaseholds and violated WAC 332-30-171(8)(b). CP at 11. There is no ambiguity here; United's sole purpose in this lawsuit was to force the Department to evict, fine, and sue the vessel owners. Accordingly, the vessel owners were necessary parties.
¶ 17 First, the trial court could not make a complete determination of the controversy without their presence. They were the only individuals who could rebut United's factual allegations against them or present defenses to the claims that their vessels' use violated the law. Ruston, 90 Wash.App. at 82, 951 P.2d 805. Second, the vessel owners' ability to protect their interest in the subject matter of the litigation would have been impeded by a judgment in the case. Ruston, 90 Wash. App. at 82, 951 P.2d 805. Although the result of the Department being compelled to evict, fine, and sue the owners is not certain, a declaratory judgment in United's favor would preclude the owners from reaching a settlement or otherwise avoiding legal action against them. Moreover, one of United's requests was for the trial court to declare that the vessel owners violated the regulations; the owners must be afforded the ability to defend against that claim. Third, for reasons already discussed, judgment for United in this case necessarily affects the vessel owners' interest in property ownership and use. Ruston, 90 Wash.App. at 82, 951 P.2d 805. United failed to join the vessel owners, they were necessary parties, and, therefore, the trial court was required to grant summary judgment to the Department because it lacked jurisdiction over the matter.

THE ACTION IS OUTSIDE THE SCOPE OF THE UDJA
¶ 18 Although the joinder issue is dispositive, we address the scope of a UDJA's action because this issue is one of significant public interest. We hold that, because United does not question the construction or validity of a law, the action falls outside the scope of the UDJA.
¶ 19 United has failed to present the type of claim that is the proper subject matter for declaratory judgments. United does not challenge the construction or validity of a law and a declaratory judgment is not an available remedy.
¶ 20 The UDJA provides that:
A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.
RCW 7.24.020 (emphasis added). Declaratory judgment actions are proper "to determine the facial validity of an enactment, as distinguished from its application or administration." City of Federal Way v. King County, 62 Wash.App. 530, 535, 815 P.2d 790 (1991) (citing Seattle-King County Council of Camp Fire v. Dep't of Revenue, 105 Wash.2d 55, 57-58, 711 P.2d 300 (1985)). The specific grant of power in RCW 7.24.020 is not, however, an exhaustive list of the general powers to seek declaratory relief. RCW 7.24.050. *1038 Rather, the UDJA grants, trial courts the general power to "declare rights, status and other legal relations" if "a judgment or decree will terminate the controversy or remove an uncertainty." RCW 7.24.010, .050.
¶ 21 But the trial court lacked specific authority to issue a declaratory judgment for this action because United did not raise a "question of construction or validity." RCW 7.24.020. The sole question that United presented was whether the Department properly applied or administered WAC 332-30-127 and WAC 332-30-171(8) when it exercised its discretion and chose not to enforce these regulations against alleged Eagle Harbor trespassers in the manner United demanded. Neither party contends that the regulations are ambiguous and courts do not engage in judicial construction of unambiguous regulations. Densley v. Dep't of Ret. Sys., 162 Wash.2d 210, 221, 173 P.3d 885 (2007). Because United does not challenge the regulations' facial validity, a declaratory judgment is not an available remedy under the power specifically enumerated in RCW 7.24.020.
¶ 22 Further, the trial court did not have the general power to enter a declaratory judgment under RCW 7.24.050. Again, United's sole claim was that the Department improperly applied or administered two provisions when it declined to enforce them against alleged trespassers who were not parties to this litigation. A claim such as this, of an agency's enforcement of a regulation, does not touch upon "rights, status [or] other legal relations." RCW 7.24.010. And a declaration that the Department should prosecute trespassers would not "terminate the controversy or remove an uncertainty" but, rather, would reopen the controversy of whether the individuals did trespass and retain the uncertain result of prosecutions. RCW 7.24.050. Accordingly, the trial court did not have general power to issue a declaratory judgment under RCW 7.24.050. Summary judgment on this claim was proper.
¶ 23 Declaratory judgments are not meant to compel government agencies to enforce laws. If the UDJA allowed otherwise, the negative implications would be endless. Courts would be forced to supervise administrative agencies, a function we have long found contrary to the judiciary's proper role.[6] And citizens could bring diverse, and even contradictory, actions in each of our 39 counties to compel an agency to actor decline to actupon its enforcement power in accord with their individual interests and priorities. The uniform rules committee and our legislature apparently foresaw such consequences when they adopted the UDJA. Accordingly, our legislature has declined to allow actions where, as here, citizens attempt to act as private attorneys general to dictate a state agency's enforcement decision. See RCW 7.24.020, .050. This is not the proper subject for a declaratory judgment and the trial court did not err in granting summary judgment to the Department.
¶ 24 Accordingly, we affirm.
We concur: ARMSTRONG, J., and VAN DEREN, C.J.
NOTES
[1] United is a non-profit corporation that is comprised of owners and residents of residential waterfront and upland properties, as well as owners of commercial properties adjoining Eagle Harbor.
[2] United alleged that vessel owners and live-aboards (1) dumped raw sewage and trash into Eagle Harbor, (2) verbally harassed its members, (3) vandalized its members' properties, and (4) physically threatened its members.
[3] In 2006, the City Council adopted a harbor plan to address the matters concerning United. Available at http://www.ci.bainbridge-isl.wa.us/eagle_harboropen_water_marina.aspx (last visited Oct. 30, 2008).
[4] See ch. 34.05 RCW.
[5] See ch. 7.24 RCW.
[6] See, e.g., Helland v. King County Civil Serv. Comm'n, 84 Wash.2d 858, 862-63, 529 P.2d 1058 (1975) (under APA, judiciary has no power or obligation to supervise administrative functioning); Daines v. Spokane County, 111 Wash. App. 342, 350, 44 P.3d 909 (2002) (court will not supervise an agency's document retention policy); Stidham v. Dep't of Licensing, 30 Wash.App. 611, 616, 637 P.2d 970 (1981) (courts afford significant latitude to officials executing duty to supervise a state agency).