FILED
COURT OF APPEALS
DIVISION II

2015 JUN -9 AM 8:45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STEVEN P. KOZOL, | No. 45601-0-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, ERIC JACKSON, and GREG JONES, | UNPUBLISHED OPINION |
| Respondents. | |

JOHANSON, C.J. — Steven P. Kozol appeals the superior court's orders denying his motion to file a second amended complaint, granting the Department of Corrections' (DOC) motion to dismiss his Uniform Declaratory Judgments Act[1] (UDJA) complaint challenging a prison disciplinary infraction, and dismissing his claims with prejudice. Because Kozol's claims were not within the scope of the UDJA, the superior court did not err in dismissing Kozol's UDJA claims and we affirm that order. But because the superior court should have allowed Kozol to amend his complaint to include his proposed statutory writ of certiorari, we reverse the order denying the motion to amend in part and remand to allow Kozol to amend his complaint to include the statutory writ and for further proceedings.

---

[1] Ch. 7.24 RCW.

## FACTS

### I. PRISON DISCIPLINARY INFRACTION

Kozol is an inmate confined in a DOC facility. On April 6, 2011, following a disciplinary hearing, DOC disciplinary hearings officer Greg Jones found Kozol guilty of a serious prison disciplinary infraction committed on September 10, 2010. Jones sanctioned Kozol to 10 days cell confinement and required him to send some of his personal property consisting of "music-related items" out of the prison system. Clerk's Papers (CP) at 68. Kozol appealed the infraction, and DOC Associate Superintendent of Programs Eric Jackson affirmed Jones's decision.

### II. FIRST AMENDED COMPLAINT

In January 2013, Kozol filed a complaint in the Thurston County Superior Court against the DOC requesting declaratory judgment and injunctive relief. Kozol moved to amend his complaint, this time including a claim for monetary damages; the DOC did not oppose this motion. But the DOC moved to dismiss any 42 U.S.C. § 1983 claims under CR 12(c). The superior court dismissed with prejudice any 42 U.S.C. § 1983 claims against the DOC. The court also granted Kozol's motion to amend.

Kozol's amended complaint added Jones and Jackson as defendants. Kozol asserted that Jones, acting in his official capacity, had violated his (Kozol's) due process rights by failing to timely provide Kozol with copies of all of the evidence used against him at the infraction hearing as required under WAC 137-28-290(2)(f) and by failing to allow Kozol to present documentary evidence in his defense as required under WAC 137-28-300(6). Kozol further asserted that

Jackson, acting in his official capacity, had filed a false public record in violation of RCW 40.16.030[2] when he filed the decision affirming Jones's decision.

Kozol asked the superior court to enter a declaratory judgment under the UDJA finding that (1) the DOC and the individually named defendants had violated WAC 137-28-290(2)(f) and WAC 137-28-300(6), (2) Jackson's act of filing the appeals decision amounted to a filing of a false public record and "constitutes a felony violation of RCW 40.16.030," and (3) the guilty finding was "unlawful and void." CP at 19. He also asked that the court prohibit the DOC from using this infraction against him in any way. In addition, Kozol requested significant monetary damages for the injuries caused by the alleged violations of the WACs and Jackson's alleged act of filing a false public record.

### III. MOTION TO DISMISS

The DOC again moved for dismissal under CR 12(c). It argued that the superior court did not have jurisdiction over a felony allegation filed in a civil action, that there was no private cause of action for violations of ch. 137-28 WAC, that Kozol's challenges to his infraction were more properly presented as a personal restraint petition (PRP), and that Kozol could not obtain declaratory relief under the UDJA on his prison disciplinary infraction claim.

Relying on *Bainbridge Citizens United v. Department of Natural Resources*, 147 Wn. App. 365, 198 P.3d 1033 (2008), the DOC argued that the UDJA could not be used to determine if an agency had properly applied or administered an agency regulation or to enforce the criminal law.

---

[2] RCW 40.16.030 states that it is a class C felony to knowingly procure or offer any false or forged instrument to be filed, registered, or recorded in any public office.

Citing *Kitsap County v. Smith*, 143 Wn. App. 893, 180 P.3d 834 (2008), Kozol[3] asserted that the UDJA applied because they involved issues of public importance and the interpretation and application of a criminal statute or rule and this was the only way he could obtain review within the Washington court system. Kozol also argued that he could not file a PRP because he could not establish that he was under restraint as defined by RAP 16.4.

The superior court rejected Kozol's argument that he could request declaratory judgment on the issue of whether Jackson had violated a criminal law. It distinguished *Kitsap County* where the court needed to determine if a criminal statute had been violated before it could resolve the UDJA action. The superior court then stated that the UDJA "is intended for specific situations where there is a need for a court to come in and define the rights and responsibilities of the parties" and that the issues must be of "great public importance," but neither was present in this case. Report of Proceedings (RP) (Oct. 4, 2013) at 15. The court also stated that Kozol's complaint addressed a single disciplinary hearing and that application of the DOC's rules in one instance was not a matter of widespread importance. Additionally, the court found that because Kozol could file a 42 U.S.C. § 1983 action, he had another available remedy.

After announcing that it was granting the DOC's motion to dismiss Kozol's UDJA claims, the superior court commented on Kozol's request for damages. The superior court stated that it was unclear whether Kozol was attempting to also proceed under "some kind of tort theory" that might be able to go forward. RP (Oct. 4, 2013) at 16. The superior court advised the parties that

---

[3] Kozol was now represented by counsel.

it would hear argument about whether Kozol was attempting to bring a tort claim when the parties next appeared to present the orders on the DOC's motion to dismiss the UDJA claims.

## IV. KOZOL'S SECOND MOTION TO AMEND

Shortly before the next hearing, Kozol moved to file a second amended complaint. Kozol's proposed second amended complaint (1) purported to dismiss any damages claims, (2) attempted to recharacterize his previous UDJA claims as seeking a declaration of "all inmate['s]" rights under the WACs, (3) alleged that the DOC had violated its own regulations, and (4) requested a constitutional and/or statutory writ of certiorari. CP at 108. The DOC argued that this motion to amend was untimely because the superior court had already dismissed all claims except for a possible tort claim.

At the next hearing, the superior court addressed Kozol's second motion to amend. The court stated that the newly proposed amended UDJA claims were essentially new claims because they would require examination of the prison disciplinary system as a whole rather than just the procedure that was applied to Kozol. The court also stated that although it was possible that Kozol could pursue a writ of certiorari, that legal theory was also broader than the claims Kozol originally alleged. Accordingly, the superior court denied Kozol's second motion to amend; it also signed the order granting the DOC's motion to dismiss and dismissing Kozol's claims with prejudice.

Kozol appeals the order granting the DOC's motion to dismiss and dismissing his claims with prejudice and the order denying his second motion to amend.

## ANALYSIS

### I. MOTION TO DISMISS

Kozol argues that the superior court erred in dismissing his UDJA claims. We hold that the superior court properly dismissed these claims because they were not within the scope of the UDJA.

### A. STANDARD OF REVIEW

We review de novo a trial court's ruling dismissing a case under CR 12(c).[4] *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 203, 289 P.3d 638 (2012). We examine the pleadings "to determine whether the claimant can prove any set of facts, consistent with the complaint, that would entitle the claimant to relief." *Parrilla v. King County*, 138 Wn. App. 427, 431, 157 P.3d 879 (2007). On a CR 12(c) motion, we presume that the allegations asserted in the complaint are true. *Parrilla*, 138 Wn. App. at 431-32.

### B. CLAIMS NOT WITHIN SCOPE OF UDJA

One of the grounds the superior court cited for the dismissal was that Kozol's claims were outside the scope of the UDJA. The superior court was correct.

The UDJA allows courts to "declare rights, duties, status and other legal relations" between parties. RCW 7.24.010. Kozol sought a declaration that the DOC had failed to follow the hearing

---

[4] Kozol has filed a statement of additional authorities citing *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998), for the premise that this was actually a dismissal on a summary judgment motion under CR 56(c). It does not appear that the superior court considered anything outside of the pleadings. Accordingly, we review this as a CR 12(c) motion. We note, however, that our decision would be the same even if this were a motion for summary judgment because we review CR 12(c) motions and CR 12(b)(6) motions under the same standards. *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 203, 289 P.3d 638 (2012).

procedures required under ch. 137-28 WAC and related injunctive relief, such as prohibiting the DOC from using the infraction against him in any way. He was not seeking to establish what requirements the regulations imposed and the DOC was not asserting that Kozol misinterpreted those regulations. Furthermore, Kozol was not seeking a declaration of status or any other legal relationship between the parties. And as we noted in *Bainbridge Citizens United*, declaratory judgment is proper to determine the facial validity of an enactment, not its application or administration. 147 Wn. App. at 374 (refusing to reach the issue of whether the Department of Natural Resources properly applied or administered certain regulations under the UDJA). Thus, this was not a proper action under the UDJA.

Kozol argues this approach unnecessarily limits the UDJA and that the UDJA allows courts to determine whether a party's actions violated the law. He cites several cases that he asserts provide examples of courts determining if a party violated the law. But these cases either involve declaratory judgments under statutes other than the UDJA;[5] do not involve any UDJA or

---

[5] *See City of Seattle v. Egan*, 179 Wn. App. 333, 335-36, 317 P.3d 568 (2014) (declaratory judgment under the privacy act); *Wash. State Commc'n Access Project v. Regal Cinemas, Inc.*, 173 Wn. App. 174, 182, 293 P.3d 413 (declaratory judgment under the Washington Laws Against Discrimination, ch. 49.60 RCW), *review denied*, 178 Wn.2d 1010 (2013).

declaratory judgment whatsoever;[6] or required the interpretation of statutes,[7] which is clearly within the UDJA's scope. Thus, none of these cases are helpful to Kozol.[8]

Kozol also attempts to distinguish *Bainbridge Citizens United*, arguing that unlike in that case, he was not attempting to force an agency to act. Kozol is correct that the petitioners in *Bainbridge Citizens United* sought an order requiring an agency to act under its rules. 147 Wn. App. at 369. Although Kozol was not attempting to force the DOC to act and was, instead, seeking declaratory judgment that the DOC had failed to follow its own rules, that distinction is not dispositive. *Bainbridge Citizens United* clearly describes the scope of the UDJA. 147 Wn. App. at 374. Because *Bainbridge Citizens United* is factually distinct from the facts here does not mean that we cannot apply the law as stated in that case.

Kozol also argues that he was entitled to declaratory judgment as to whether Jackson filed a false public record in violation of RCW 40.16.030. He argues that Washington courts have reviewed whether a party's actions have violated the law. Although courts have examined whether a party's actions have violated the law in UDJA cases, they have done so when such determinations

---

[6] *See Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 308 P.3d 716 (2013).

[7] *See Yakima v. Yakima Herald-Republic*, 170 Wn.2d 775, 788, 246 P.3d 768 (2011); *Wash. State Coal. for the Homeless v. Dep't of Soc. & Health Services*, 133 Wn.2d 894, 900, 949 P.2d 1291 (1997); *City of Lakewood v. Koenig*, 176 Wn. App. 397, 400, 309 P.3d 610 (2013), *remanded*, 182 Wn.2d 87, 343 P.3d 335 (2014); *Kitsap County Prosecuting Attorney's Guild v. Kitsap County*, 156 Wn. App. 110, 115, 231 P.3d 219 (2010); *Kitsap County*, 143 Wn. App. at 916; *City of Raymond v. Runyon*, 93 Wn. App. 127, 134-37, 967 P.2d 19 (1998); *Protect the Peninsula's Future v. Clallam County*, 66 Wn. App. 671, 675-76, 833 P.2d 406 (1992).

[8] We note that although the UDJA allows courts to determine questions of fact (such as whether a hearing complied with ch 137-28 WAC) when necessary or incidental to declaration of legal relations, *Trinity Universal Insurance Co. v. Willrich*, 13 Wn.2d 263, 268, 124 P.2d 950 (1942), that is not what Kozol was attempting to do here. Kozol was alleging solely a factual issue.

are related to the declaration of the parties' legal relations. *See, e.g., Kitsap County*, 143 Wn. App. at 916 (determination of whether former employee removed public records in violation of RCW 40.14.010 or RCW 40.14.020 and various county codes necessary to determine if county was entitled to declaratory relief). Whether Jackson violated RCW 40.16.030 by filing a false public record is not relevant to Kozol's disciplinary infraction, so the superior court properly dismissed this claim.

We hold that the superior court did not err when it dismissed Kozol's UDJA claims because they were not within the scope of the UDJA.[9]

## II. DENIAL OF SECOND MOTION TO AMEND

Kozol next argues that the superior court erred when it denied his second motion to amend the complaint. He argues that the allegations in the proposed second amended complaint merely clarified his legal claims, that the amended complaint was based entirely on the same set of facts, and that there was no prejudice to the respondents. The superior court did not err when it denied his motion to amend his UDJA claims. But we agree that the superior court erred in denying Kozol's motion to amend his complaint to include his proposed statutory writ of certiorari.[10]

---

[9] Because of this holding, we do not address Kozol's other arguments related to the dismissal of his UDJA claims.

[10] Because we hold that Kozol may bring a statutory writ, we do not address whether he can also bring a constitutional writ. *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 533, 79 P.3d 1154 (2003) (constitutional writ is only available when both direct appeal and statutory writ of review are unavailable).

## A. STANDARD OF REVIEW

We review for abuse of discretion a trial court's ruling on a motion to amend the complaint. *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Wilson*, 137 Wn.2d at 505. To amend a pleading after the opposing party has responded, the party seeking to amend must obtain the trial court's leave or the opposing party's consent. CR 15(a). A trial court must grant leave freely "when justice so requires." CR 15(a). A motion to amend raising new claims is usually allowed, even if made shortly before trial, if the new claims "required essentially the same proof" as the previously alleged claims. *Karlberg v. Otten*, 167 Wn. App. 522, 529-30, 280 P.3d 1123 (2012); *see also Herron v. Tribune Pub. Co.*, 108 Wn.2d 162, 166-67, 736 P.2d 249 (1987).

"The touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party." *Wilson*, 137 Wn.2d at 505. "In determining whether prejudice would result, a court can consider potential delay, unfair surprise, or the introduction of remote issues." *Kirkham v. Smith*, 106 Wn. App. 177, 181, 23 P.3d 10 (2001) (citing *Herron*, 108 Wn.2d at 165-66).

## B. UDJA CLAIMS

To the extent Kozol was merely revising his previous UDJA claims, as we discussed above, these claims were outside the scope of the UDJA. Accordingly, the superior court did not abuse its discretion when it refused to allow Kozol to amend these claims.

To the extent his proposed second amended complaint attempted to recast his UDJA claims as requests for the superior court to provide declaratory judgment establishing the rights of all

prisoners under the DOC's regulations, the superior court also properly refused to allow Kozol to add those claims. Kozol's newly alleged UDJA claims were broader and went beyond the facts alleged in the first amended complaint. The new UDJA claims would have required the DOC to address the rights prisoners had under the prison disciplinary rules rather than whether those rules were properly applied in a particular instance, namely Kozol's disciplinary hearing. The revised UDJA claims were not just presenting a new legal theory based on the same set of circumstances or facts that Kozol set forth in his earlier pleadings. And we agree that it was unfairly prejudicial to require the DOC to respond to issues related to the disciplinary system as a whole rather than to issues related to a single disciplinary hearing, especially in light of the fact the court had already orally dismissed Kozol's original claims. Accordingly, we hold that the superior court did not abuse its discretion in denying Kozol's motion to amend his complaint to include these new UDJA claims.

## C. WRIT OF CERTIORARI

In his proposed second amended complaint, Kozol attempted to bring a writ of certiorari, asserting that his disciplinary hearing was invalid because the DOC's officers, acting in a quasi-judicial capacity, failed to provide him with the procedures he was entitled to under the DOC's rules. The DOC argues that the motion to amend was futile, and because it was untimely, it was prejudicial. We disagree with the DOC.

### 1. FUTILITY: WRIT'S AVAILABILITY

We first address whether the amendment was futile because Kozol did not allege facts establishing that a statutory writ was available to him. We hold that a statutory writ of certiorari was available to him so the amendment was not futile.

11

RCW 7.16.040 sets out four factors that a court must find in order to issue a statutory writ: "'(1) that an inferior tribunal (2) exercising judicial functions[11] (3) exceeded its jurisdiction or acted illegally, and (4) there is no adequate remedy at law.'" *Raynes v. City of Leavenworth*, 118 Wn.2d 237, 244, 821 P.2d 1204 (1992) (quoting RCW 7.16.040). We hold that Kozol alleged sufficient facts to establish he was entitled to pursue a statutory writ.

### a. INFERIOR TRIBUNAL EXERCISING JUDICIAL FUNCTIONS

The fact courts are able to review prison disciplinary hearings (usually by means of PRPs) demonstrates that disciplinary hearings are held by inferior tribunals. *See, e.g.*, *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 205, 227 P.3d 285 (2010). Further, prison disciplinary hearings involve the exercise of a judicial or quasi-judicial function.

We consider four factors when determining whether an action is quasi-judicial:

> "(1) [W]hether a court could have been charged with making the agency's decision; (2) whether the action is one which historically has been performed by courts; (3) whether the action involves the application of existing law to past or present facts for the purpose of declaring or enforcing liability; and (4) whether the action resembles the ordinary business of courts as opposed to that of legislators or administrators."

*Dorsten v. Port of Skagit Co.*, 32 Wn. App. 785, 788, 650 P.2d 220 (1982) (quoting *Wash. Fed'n of State Employees v. State Pers. Bd.*, 23 Wn. App. 142, 145-46, 594 P.2d 1375 (1979)); *see also In re Det. of Enright*, 131 Wn. App. 706, 716, 128 P.3d 1266 (2006). We find all four factors here.

First, although courts do not regularly determine whether an inmate has committed a prison disciplinary infraction, they do make such determinations when an inmate is charged with

---

[11] Judicial functions include all actions that are "'judicial' in nature," including quasi-judicial administrative actions. *Williams v. Seattle Sch. Dist. No. 1*, 97 Wn.2d 215, 218, 643 P.2d 426 (1982).

persistent prison misbehavior. RCW 9.94.070. Thus, it is clear that prison disciplinary hearings involve matters that a court could have been charged with making. Second, similar to a criminal charge, a disciplinary infraction requires a tribunal to determine whether the defendant or inmate is guilty or not guilty of the alleged act and this is clearly an action that courts have historically performed. Third, in determining whether an inmate had violated a prison regulation, the hearing officer applies existing law to past or present facts for the purpose of declaring guilt or innocence. And, finally, determining guilt or innocence also clearly resembles the business of the courts as opposed to that of legislators or administrators. Thus, all four factors are met here and it is clear that the disciplinary hearing at issue involved an inferior tribunal exercising a quasi-judicial function.

### b. EXCEEDED JURISDICTION OR ACTED ILLEGALLY

Having met the first two factors necessary to support a statutory writ, we must next examine whether Kozol alleged facts establishing that the tribunal exceeded its jurisdiction or acted illegally. The DOC argues that Kozol did not allege an "illegal" act as defined in *City of Seattle v. Holifield*, 170 Wn.2d 230, 244-45, 240 P.3d 1162 (2010).[12] We disagree.

*Holifield* held,

[F]or purposes of RCW 7.16.040, an inferior tribunal, board or officer, exercising judicial functions, acts illegally when that tribunal, board, or officer (1) has committed an obvious error that would render further proceedings useless; (2) has committed probable error and the decision substantially alters the status quo or substantially limits the freedom of a party to act; or (3) *has so far departed from the accepted and usual course of judicial proceedings as to call for the exercise of revisory jurisdiction by an appellate court.*

---

[12] The DOC does not challenge Kozol's motion to amend to add a writ on the grounds that the DOC was not acting as a quasi-judicial tribunal.

170 Wn.2d at 244 (emphasis added). Although prisoners have limited rights in disciplinary proceedings, the DOC's own rules require that prisoners be allowed to review the DOC's evidence and to present evidence in their defense. *See* WAC 137-28-290(2)(f), -300(6). Kozol alleges that the DOC failed to follow these rules and these allegations, if true, would demonstrate that the hearing officer departed so far from the accepted and usual course of the proceedings as to call for review. Thus, Kozol has alleged facts capable of establishing this factor.

### c. NO OTHER ADEQUATE REMEDY AT LAW

Finally, we must address whether Kozol had other remedies at law. Kozol had four other possible remedies: (1) a UDJA action, (2) a 42 U.S.C. § 1983 claim, (3) a PRP, or (4) a tort claim. None of these was a viable alternative.

As to a possible UDJA claim, as discussed above, Kozol's claims fell outside the scope of the UDJA. Thus, a UDJA claim was not an available remedy.

As to a possible 42 U.S.C. § 1983 action, although the superior court determined that Kozol could bring a 42 U.S.C. § 1983 action, we disagree. To obtain relief under 42 U.S.C. § 1983, Kozol must show that he had been deprived of a right secured under the constitution or federal law. *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11-12, 829 P.2d 765 (1992). Kozol's allegations did not establish that the sanctions imposed deprived him of any constitutional or federal right.

The sanctions imposed, 10 days of cell confinement and being unable to keep certain personal property, touched on Kozol's liberty and property interests. But a prisoner's interests are limited to those deprivations that subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). A 10-day cell confinement is not an atypical and significant

hardship. *In re Pers. Restraint of Gronquist*, 89 Wn. App. 596, 601-02, 950 P.2d 492 (1997) (stating that cell or room confinement not to exceed 10 days for a general infraction does not impose atypical and significant hardship on an inmate), *rev'd on other grounds*, 138 Wn.2d 388, 978 P.2d 1083 (1999). Furthermore, prisoners also have limited rights to retain their personal property. *See* WAC 137-36-030.[13] And Kozol has not shown that his being unable to keep specific personal property in prison created an atypical and significant hardship in light of his already restricted ability to retain his personal property. Because Kozol cannot show that the sanctions imposed deprived him of any constitutional or federal right, Kozol did not have another available remedy under 42 U.S.C. § 1983.

Nor does Kozol have the option of filing a PRP. To obtain relief by means of a PRP, Kozol would have to establish that he is under "restraint" as defined in RAP 16.4(b). RAP 16.4(b) provides,

> A petitioner is under a "restraint" if the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case.

But as we discuss above, a lawfully incarcerated individual such as Kozol has only the "'most basic'" liberty interests. *In re Pers. Restraint of Lain*, 179 Wn.2d 1, 14, 315 P.3d 455 (2013) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983), *overruled in part on other grounds by Sandin*, 515 U.S. 472)). And those limited interests are not violated

---

[13] WAC 137-36-030(1) states that "[o]nly authorized items may be retained by an inmate in the custody of the [DOC]." The rule then states that the DOC can limit the quantity and value of personal items for a variety of penological purposes and that the superintendents were required to establish regulations regarding personal property.

15

unless the restraint imposed amounts to "an atypical and significant deprivation from the normal incidents of prison life." *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 393, 20 P.3d 907 (2001) (citing *Sandin*, 515 U.S. at 484). Because Kozol's 10-day cell confinement and deprivation of personal property do not amount to atypical or significant deprivations from the normal incidents of prison life, he does not establish that he is currently under restraint as defined by RAP 16.4(b), and he cannot obtain relief by means of a PRP. And finally, although a tort claim could potentially address Kozol's loss of his property, it is not an adequate remedy because it would not address the disciplinary infraction itself.[14] Because Kozol cannot bring this action under the UDJA or as a 42 U.S.C. § 1983 claim, a PRP, or a tort claim, he does not have any other adequate remedy at law.

Accordingly, Kozol shows that the statutory writ was available to him. Because the writ was an available remedy, the DOC has failed to show that amendment was futile. We next turn to whether the amendment was prejudicial.

---

[14] In his brief, Kozol asserts that because a prior 42 U.S.C. § 1983 claim was dismissed with prejudice, the DOC cannot assert that he has other alternative relief by means of a 42 U.S.C. § 1983 or tort claim because res judicata precludes such claims. The DOC argues that in so arguing, Kozol has admitted that he had other alternative relief available. The record before us, however, shows that Kozol filed a claim in the federal district court only alleging conversion of his property in 2010 and that he amended this claim to assert a retaliation claim on March 17, 2011. But the DOC's own documentation shows that Kozol voluntarily dismissed this case. Res judicata requires, among other things, concurrence of subject matter and a final judgment on the merits of the prior suit. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004); *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983). Based on the record, it does not appear that the previous action related to the disciplinary infraction, so there is no concurrence of subject matter. Furthermore, because there was no final judgment on the merits, res judicata cannot apply.

## 2. NO PREJUDICE

The DOC argues that allowing Kozol to bring the writ was prejudicial because the amendment was untimely and went beyond the scope of the presentment hearing.[15] Although the writ was a new claim, this claim relied on the same facts and the same allegation that the hearing officer did not provide Kozol with the proper procedures. Even though the specific type of claim changed, the DOC was aware of the underlying nature of the claim well before Kozol brought his second motion to amend, and the DOC does not show how merely changing the claim to a writ was prejudicial despite any delay. The DOC also fails to allege any specific prejudice, such as the loss of evidence, which resulted from any potential delay.

Furthermore, CR 15(a) states that "leave shall be freely given when justice so requires." And a motion to amend raising new claims is usually allowed, even if made shortly before trial, if the new claims "required essentially the same proof" as the previously alleged claims. *Karlberg*, 167 Wn. App. at 529-30; *see also Herron*, 108 Wn.2d at 166-67. Kozol's right to proper process outweighs any potential prejudice caused by the delay in Kozol's bringing the writ given the similarities of the claims and the lack of any evidence of any specific prejudice.

Accordingly, we hold that because Kozol has shown that his claim falls within the scope of a statutory writ of certiorari, his claim was not futile. We further hold that because the writ was based on the facts alleged in the original and first amended complaint, the DOC is not prejudiced by this new claim. Thus, the superior court should have allowed Kozol to amend his complaint to

---

[15] The DOC also asserts that the amendment was prejudicial because it would require the DOC to relitigate a claim the trial court previously determined was inadequate. Although this may have been the case for the UDJA claim, the trial court had not previously addressed any possible writ or otherwise address Kozol's claim that the hearing officer did not follow proper procedure.

No. 45601-0-II

include the statutory writ. We reverse, in part, the superior court's order denying Kozol's motion to amend.

### III. KOZOL'S REQUEST FOR FEES AND COSTS

Finally, Kozol requests fees and costs under RCW 7.16.260 and RCW 7.24.100 as the prevailing party. RCW 7.16.260 allows for costs to be awarded if he or she files a successful writ of mandamus. RCW 7.24.100 allows for the award of costs under the UDJA. Kozol has not filed a writ of mandamus and the superior court properly dismissed his UDJA claims, so Kozol is not entitled to fees or costs under either of these statutes. Accordingly, we deny his request for fees and costs.

We affirm the superior court's order dismissing Kozol's UDJA claims. But we reverse the order denying the motion to amend in part and remand to allow Kozol to amend his complaint to include the statutory writ and for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.

18